In an action by Darby Banking Company against one who executed notes and a bill of sale to secure debt, the jury would have been authorized to find that the property, for the purchase-price of which the notes and bill of sale to secure debt were allegedly given, was sold by the plaintiff to the defendant, and not by an individual, and that the plaintiff was liable in damages for a breach of the contract of sale. The court consequently erred in directing a verdict for the plaintiff and overruling the defendant's motion for a new trial.
 DECIDED JANUARY 27, 1943.
Darby Banking Company sued R. Holton on two promissory notes. The petition alleged: "that the said notes were given for part of the purchase-price of one No. 27 moulder and matcher manufactured by S. A. Woods Machine Co., and that, contemporaneously with the execution and delivery of the said two notes, the said R. Holton executed and delivered to your petitioner his bill of sale conveying the said described property for the purpose of securing the payment of said notes to your petitioner; which said bill of sale is recorded in the office of the clerk of the superior court of Emanuel County, Ga. in Mortgage Book F-3, page 17, and to which reference is hereby made." The defendant answered, denying the indebtedness sued for, and alleging further, as follows: "For further plea and answer defendant says that the machinery purchased was to be a complete set and as complete included two `side heads' which was to be furnished with said machinery. Defendant says he made a demand on Mr. J. F. Darby, who was president of the Darby Banking Company, who sold him said machinery, for said side heads, also on his agent Mr. George Shiplett. The delivery of the side heads was refused. Defendant says that on account of said refusal to deliver said parts he was forced to buy them elsewhere; that he made a trip to Augusta, Georgia, then to Savannah and then to Macon where he finally bought the parts needed from one Paul Williams of Williams Manufacturing Company for the price of $60. Defendant says that his three trips caused him an expense of $8 each or $24. Defendant says that petitioner breached said contract by failing to deliver said side heads and damaged defendant in the sum of $84 and interest on same from January 15, 1937, at the same rate of interest charged *Page 771 
by the plaintiff. Wherefore defendant prays for judgment against the plaintiff in the amount of the difference between the claim of the defendant and the smaller claim of the plaintiff."
The plaintiff introduced in evidence the notes sued on and a bill of sale to secure debt from R. Holton to Darby Banking Company for $351, conveying "one No. 27 moulder and matcher, manufactured by S. A. Woods Machine Co.," in which it was stated in part as follows: "This note is given covering deferred installments under bill-of-sale contract of even date." Holton testified as follows: "My name is Rufus Holton. I am the defendant in the case. In buying this No. 27 moulder and matcher manufactured by S. A. Woods Machine Company, I dealt with Mr. Shiplett for J. F. Darby who is the president of Darby Banking Company. I first went to Mr. Shiplett, who is a son-in-law of Mr. Darby, and asked him to call Mr. Darby and find out the price of the machinery. Mr. Shiplett told me that Mr. Darby said he would take $400 for either one of the machines, and I decided to take the S. A. Woods machine. We agreed on the price. I was to pay $100 down and the balance in three notes, two for $150 each and one for $51. One of the $150 notes has been paid. There was a necessary part of this machinery called `side heads' which was not delivered at the time the machine was delivered, with the understanding from Mr. Shiplett to come back the next day and they would get them for me. I came back the next day and made a demand for the side heads and they failed to deliver them. They asked me to come back the next day which I did, and I had Mr. Shiplett to call Mr. Darby back and ask him what he was going to do about the side heads, that I had made three trips to Vidalia as he had asked me to do, and Mr. Darby, talking to Mr. Shiplett, and Mr. Shiplett informed me that he had sent them to Boston, Massachusetts, to be reconditioned and he thought we would find these side heads over at the mule barn not uncrated. So I went and looked for the side heads with Mr. Smith. So I goes back to Mr. Shiplett's office and have him call Mr. Darby, stated that we could not find the side heads, asking him what he was going to do about the matter of the side heads. Mr. Shiplett stated that he would get up the heads if he could find them and call me over the `phone or write me, which he did not do either one. Later I had to go into the open market and buy two side *Page 772 
heads to complete this machinery before I could use it, which I did. I made one trip to Augusta, Georgia, to buy from the Perkins Manufacturing Company and found that they had not any. I came back home the following day, went to Savannah to the Savannah River Lumber Company to see if I could secure some side heads there which I did not. I came back home the following day. I goes to Macon and Mr. Paul Williams sold me two side heads to complete this machinery at the price of $60. I figure my three trips to Augusta, Savannah, and Macon worth $8 each or $24 total. For the purchase of the side heads and my trips I claim a set-off of $84 and interest at the rate charged me. I was doing business with Mr. J. F. Darby who is the same man as the president of the plaintiff in the case, Darby Banking Company. I signed the notes and bill of sale introduced. I also signed the agreement which you hold as the manner of payment for the machinery."
The court directed a verdict for the plaintiff. The defendant excepted to the overruling of his motion for new trial.
The court erred in directing the verdict and in overruling the motion for new trial. The jury would have been authorized to find that the defendant purchased the property from the Darby Banking Company. Nothing else appearing, the statement in the bill of sale to secure debt that "this note is given covering deferred installments under bill-of-sale contract of even date" authorized the inference that "the bill of sale of even date" was between the bank as seller and the defendant as buyer, as it would be unusual, to say the least, to refer to a bill of sale from a stranger to the contract to the defendant. Under this view the inference was authorized that the parties dealing with the defendant were acting as agents of the bank. It is argued that Mr. Darby as an individual sold the property, and defendant borrowed money from the bank with which to pay him. There was no evidence to this effect. If the bill of sale was in fact between Darby and the defendant, his failure to produce it would not preclude him from prevailing in the case assuming that it was the defendant's duty to produce it. Cotton States Fertilizer Co. v.Childs, 179 Ga. 23 (174 S.E. 708). The *Page 773 
defense made should have been submitted to the jury under the evidence. The court erred in overruling the motion for new trial.
Judgment reversed. Stephens, P. J., and Sutton, J., concur.